(No. 6788. July 16, 1940.)

LEON GRAM SABOE and DOROTHY SABOE, Respondents, v. GOLD DREDGING INCORPORATED, a Corporation, FRANK KERNS, M. R. McMICKEN and JOHN A. KUTZ, Trustees for and on Behalf of the Shareholders of Said Gold Dredging, Incorporated, Appellants, and S. L. GODFREY, and the Unknown Successors and Claimants to the Interest of S. L. GODFREY, Non-appearing Defendants.

[105 Pac. (2d) 330.]

Samuel F. Swayne, Merrick, Fitch & Hammer and Hawley & Worthwine, for Appellants.

Edward T. Johnson and Charles F. Reddoch, for Respondents.

GIVENS, J.—October 10, 1933, respondent Saboe and wife, with one Godfrey, by a so-called lease and agreement con-

tract, sold to Gold Dredging Incorporated, certain placer mining claims, specifying how they should be worked, payment of royalties etc., and also "One Gold Dredge, together with all machinery and equipment now thereon;" with these further provisions relative to the dredge:

" . . . . The parties of the first part hereby agree to place in escrow with any escrowholder agreeable to the party of the second part, a bill of sale to said Dredge and all equipment, which shall be delivered to the party of the second part upon full payment therefor as hereinafter provided.

. . . . . . . . . . . . . . .

"IT IS EXPRESSLY UNDERSTOOD AND AGREED, that in the event the party of the second part uses any parts, equipment, or machinery, which are part of the personal property hereinbefore described, in the building or constructing of a new or another Dredge, that such parts so used from the property covered by this agreement, shall remain the property of the parties of the first part until fully paid for, and title thereto shall not pass until such time . . . . and the party of the second part shall execute with the parties of the first part, a separate conditional sale contract covering such parts, equipment and machinery of the present Dredge so used in a new or another Dredge, for the purpose of recording the same in compliance with the laws of the State of Idaho governing conditional sales contracts.

. . . . . . . . . . . . . . .

"IT IS UNDERSTOOD AND AGREED that said Dredge and all equipment and machinery thereon, at all times while out of the possession of the Lessors and parties of the first part, shall be at the risk of the Lessee and party of the second part, and all loss or damage to said property or any part thereof, shall be borne by the Lessee and party of the second part, and no loss or damage to the same shall operate to diminish or extinguish any liability of the lessee in the Purchase price thereof.

"The lessee and party of the second part hereby agrees at all times until such Dredge is fully paid for and becomes the property of the Lessee, to keep said Dredge and Equipment and machinery insured against loss or damage by fire in

an amount equal to at least the amount of the unpaid portion of the purchase price upon said Dredge and to have the policies of insurance made with a provision for the payment in the event of loss or damage to the parties of the first part in such amount as their interest appears, and to deliver said policies to the Lessors or to the escrowholder holding the bill of sale hereinbefore mentioned.

''The Lessee and party of the second part, while said property is in its possession shall have the right to use the same for the purpose for which said property was designed, to-wit: gold dredging.''

Appellants Kerns, McMicken and Kutz, are the statutory trustees of 'appellant corporation which has become defunct. Appellant Godfrey refused to join as party plaintiff and was therefore made party defendant but did not appear as party appellant in the notice of appeal.

After the contract was made and entered into respondents contend appellants paid some $6,000 on the total price of some $13,000, leaving a balance due of some $7,200. Demand was made for $15,200 which included the balance of $7,200 on the purchase price, the difference being asserted damages.

After a trial to the court without a jury judgment was entered in favor of respondents for the return of the dredge and machinery or $15,000.

While numerous questions have been raised, the determinative issue is whether or not respondents retained title to the dredge as such or only to the equipment and machinery on the dredge, a large part of which was thereafter removed and placed on a new hull. It is this new, rehabilitated or reconstructed dredge which respondents now claim to be the subject matter of the title retaining portion of the agreement:

''IT IS EXPRESSLY UNDERSTOOD AND AGREED, that in the event the party of the second part uses any parts, equipment or machinery, which are part of the personal property hereinbefore described, in the building or constructing of a new or another Dredge, that such parts so used from the property covered by this agreement, shall remain the

property of the parties of the first part until fully paid for, and title thereto shall not pass until such time. . . . . ''

There are no pleadings and there is no testimony seeking or establishing a reformation or change in the terms of the agreement which was limited in the title retaining portion thereof to the equipment which was taken from the old dredge and used on the new one. In other words, the title retaining portion of the agreement included not a dredge but the equipment and machinery thereof:

''IT IS EXPRESSLY UNDERSTOOD AND AGREED, that in the event the party of the second part uses any parts, equipment, or machinery, which are part of the personal property hereinbefore described, in the building or constructing of a new or another Dredge, that such parts so used from the property covered by this agreement shall remain the property of the parties of the first part until fully paid for, and title thereto shall not pass until such time, and the party of the second part agrees that such notice of ownership and interest of the parties of the first part, to be given by law as herein provided for in paragraph numbered VII, shall apply to any *property* so used for such new or another Dredge, and full notice thereof shall be given in advance to all other lien-holders and conditional vendees, or mortgagees whatsoever, or any equipment or parts whatsoever of such new or another Dredge, and for the purposes of this provision of this agreement, every article of property, equipment or machinery whatsoever shall be specifically listed in such notices hereinbefore provided for, and the party of the second part shall execute with the parties of the first part a separate conditional sale contract covering such *parts, equipment and machinery* of the *present Dredge* so used in a new or another Dredge, for the purpose of recording the same in compliance with the laws of the State of Idaho governing sale contracts.'' (Italics ours.)

No additional sale contract was made but appellants make no point of that.

Respondents are entitled to judgment under the retention of title provisions of the contract only to the machinery and equipment taken from the old dredge and used and placed in the new dredge and have no retained title to the

rehabilitated dredge as such, as is clearly shown by the record as follows:

SABOE, respondent:

"Q. Do you know what equipment was taken from this dredge of yours and built into the new dredge?

"A. I do. Bucket line, digging ladder, upper and lower tumblers, winzes, pumps—

"Q. But the new dredge, they built a new dredge as far as the hull was concerned?

"A. No.

"Q. Put in a new power plant?

"A. New engine.

"Q. Built a new dredge, and took some of the equipment from the old dredge?

"A. Yes, took the old dredge and rehabilitated it.

"Q. Taking the bucket line, that was soon discarded, the bucket line was well worn out and a new bucket replaced, the entire line was when you went down?

"A. That is why a dredge is worth as much at the end of the year as when you start, probably better."

KERN, appellant:

"The COURT: What was it you took, for this $24,000.00 was it the reconstructed dredge?

"A. Yes, entirely new constructed dredge.

"The COURT: Nothing definite to show what happened. I am gathering from the whole thing they built a new dredge and used parts of the old one, discarded part of the other. That is what I was trying to clear up. Was this a new dredge that was built?

"A. Yes, sir.

"The COURT: Or did you recondition the old one?

"A. Built a new dredge.

"The COURT: When you say a reconstructed dredge you mean a new dredge?

"A. Yes, sir.

"Q. How much money did you invest in the new dredge outside of the purchase price? The Company?

"A. In the neighborhood of $60,000.00

"Q. That was to build a new dredge?

"A. Yes, sir.

"Q. That included what?

"A. Included a new engine and stacker, spud, pulleys, shafting, belting, pumps.

"Q. Engine?

"A. I mentioned that, several engines.

"Q. How about this boat, the part on the outside?

"A. New hull and superstructure.

"Q. What does it float on?

"A. Floats on what you call a bridge, I guess.

"Q. Did you build that new?

"A. Yes, sir.

"Q. Would you say this is an entirely new dredge you built, with certain equipment taken off the old dredge and put on the new?

"A. I do."

GRAVES, who acquired part of Godfrey's interest (the subsequent disposal of which is unimportant herein):

"A. When we got here we went up to the dredge and went on the dredge and Saboe said: 'Here is the dredge, here is the operation', and we discussed it and I said: 'what are the parts that are covered in the lease and agreement?' and he said: 'Well, the buckets, ladder and winch and the pump' and various items that were covered, and then I said: 'How far does the ground extend? At that time the dredge was in a sort of an open draw, possibly three-quarters of a mile long and possibly half a mile wide, and he said, 'The ground goes as far down as you can see.'"

STORMS, who helped build the new dredge:

"Q. Mr. Storms, did you construct a boat or pontoon or bridge, did you assist in that?

"A. Yes, sir, I did.

"Q. What was placed on that floating bridge or apparatus?

"A. All of the machinery that it takes to operate one with.

"Q. Will you tell the Court briefly what that machinery was, all the other integral parts or units?

"A. Bucket line and the digging ladder, and upper gearings, and the low pressure and the high pressure pumps,

screens, stacker, winch and the side lines and the ladder hoists, bridge and all the cables and flume.

"Q. Was there any power on this dredge Mr. Storms?

"A. Diesel engine.

"Q. Was there anything in the nature of an anchor to hold it?

"A. There was.

"Q. And that, in a general way, is some of the machinery that went into this new dredge?

"A. Yes, sir.

"Q. What date would you say this dredge we have been talking about was begun?

"A. Well, it was some time in April, 1934.

"The COURT: As a matter of curiosity, what is a stacker?

"A. It is a conveyor that takes large rocks that go over the table.

"The COURT: This building you say was commenced in the spring of 1934?

"A. For this particular pump. This machinery had been on four hulls since we worked on it.

"Q. Directing your attention to another dredge, I will ask you if you know whether or not, there was an older dredge in the same vicinity.

"A. Yes sir, there was.

"Q. Now for the purpose of clarity of the record, this old dredge, is it not the one that was built that you have been describing? Was this older dredge you have worked on before, was it not; that is, in 1916. You of course didn't work on the dredge built in 1934?

"A. No.

"The COURT: He stated the dredge was built in 1934. Was the one he was talking about and he said this machinery had been used on four different hulks.

"A. Yes, sir.

"Q. Now on this, for the purpose of being explicit, I will ask you, if the stacker was used on this other hull?

"A. No, the hulls I worked on before were flume boats and had no stackers.

"Q. Now do you recall what pieces of machinery from that old boat went into the new boat? That is the new rig?

"A. Well, they used the upper and lower tumbler, the bull gears too and the intermediate gears, and the ladder, ladder hoist and twelve inch pump and the upper and middle ganther cast, that is the base the intermediate gears rest on, and of course turn buckles with the guide on the rod.

"Q. How about the spud, was that on?

"A. No, the old boat was what they call a headline boat, had no spuds.

"Q. How about the winch, was that used in the old boat?

"A. They got a different winch, that is for the sideline, what we called the winch.

"Q. And how about the screen, a big revolving screen?

"A. They didn't have one on the old boat.

"Q. How about the Diesel motor?

"A. They got a motor for the new boat too.

"Q. Other pumps beside this twelve inch pump?

"A. I believe they had, I believe it was a six inch high pressure pump and the eight, they had to buy.

"Q. Was there a boiler on the dredge, the new boat I am referring to?

"A. They had a boiler, steamed to keep the stacker thawed out. But I don't know whether that was on the new boat or not. I don't think it was."

The agreement is clear that title was retained only on the equipment taken from the old dredge, not on the new dredge as such which was built in location some three miles distant from the old one. The lease agreement clearly contemplated and allowed appellants to remove the machinery, and since the demand for the return of the property under the retained title thereto exceeded and covered property to which respondents never had title, no damage resulted from the refusal to deliver. Appellants have never refused to return what they took.

Thus the respondents are not entitled to collect the $15,000 called for by the decree but should be allowed the balance due of $7,200 on the purchase price, together with interest thereon from December, 1936, the date on which the same became due and payable.

The judgment is reversed and the cause remanded for the trial court to make specific findings as to the particular "equipment, machinery, tools and material that was taken from the old dredge and used or installed in the new dredge," and adjudge title thereto in the respondents. The decree should be so amended as to specify the property to which the plaintiffs are entitled to possession, with the alternative judgment for the value, as of the date of the sale, of such property not returned, not exceeding $7,200. The trial court to take further evidence to determine the above.

Cost of the transcript on appeal to be evenly divided between appellants and respondents.

Ailshie, C. J., and Budge and Holden, JJ., concur.

Morgan, J., deeming himself disqualified, did not participate.

Petition for rehearing denied.